UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID D. MARTIN,

                Plaintiff,        Civil Action No. 16-10377
                                         Honorable Matthew F. Leitman
                                         Magistrate Judge David R. Grand

v.

AK STEEL CORPORATION and
UNITED AUTO WORKERS
INTERNATIONAL UNION,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT UAW'S MOTION TO DISMISS [16] AND
TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [31]**

Before the Court is a Motion to Dismiss filed by Defendant International Union, UAW (the "Union" or "UAW") on April 14, 2016. (Doc. #16). *Pro se* Plaintiff David Martin ("Martin") filed a response to this motion on April 26, 2016 (Doc. #19), and no reply was filed.

Additionally, on August 31, 2016, Martin filed a document entitled "Request for Summary Judgment," in which he asks the Court both to grant "Summary Judgement [sic] against the UAW" and to enter a default judgment in his favor in excess of $1,000,000. (Doc. #31).[1]

---

[1] On September 20, 2016, the UAW moved for an extension of time to respond to Martin's motion (Doc. #32), which the Court granted on September 22, 2016 (Doc. #36). Subsequently, Martin submitted a letter, asserting that the Court's "urgent" ruling on this motion "left [him] convinced that [he] will not receive a fair and impartial hearing from Magistrate David Grand"; thus, he requests that the undersigned "disqualify himself" so that he may "appeal now directly to Judge Leitman." (Doc. #38 at 1, 2). The Court notes that it acted expeditiously on the UAW's motion because it sought extension of a deadline that was fast approaching, and only after receiving and reviewing Martin's "objection" to this request (Doc. #33). Thus, the Court sees no basis for disqualification under the circumstances.

An Order of Reference was entered on February 25, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #8). The Court dispenses with oral argument pursuant to E.D. Mich. L.R. 7.1(f).

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the UAW's Motion to Dismiss **[16]** be **GRANTED** and Martin's Motion for Summary Judgment **[31]** be **DENIED**.

## II.   REPORT

### A.   Factual Background[2]

On February 3, 2016, Martin filed the instant action under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), asserting a breach of contract claim against his former employer, AK Steel Corporation ("AK Steel" or the "Company"), for its alleged wrongful termination of his employment, and a breach of the duty of fair representation claim against his union, the UAW. (Doc. #1). Martin's claims stem from his 2013 discharge from AK Steel, when the Company discovered that Martin and other hourly employees were engaged in a theft of time scheme (leaving the facility in the middle of their shift, only to return minutes before their shift ended to clock out, thus receiving pay for working the entire shift). (*Id.* at 4-6).

Martin disagreed with the Company's decision to terminate his employment and challenged his discharge under the grievance procedure contained in the applicable collective

---

[2] Generally, in ruling on a motion to dismiss, a court will look only to the allegations in the complaint. But, when a complaint refers to documents outside the pleadings, and the contents of those documents are central to the plaintiff's claims, it is appropriate for the court to consider such documents in the context of a motion to dismiss. *See, e.g., Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *Young v. United Auto Workers*, 2015 WL 7733449, at *4 (E.D. Mich. Dec. 1, 2015) (such an approach is "especially relevant … where Plaintiffs provide no documents with their Complaint, yet reference a plethora of agreements and correspondence that are central to their claims").

bargaining agreement ("CBA").  (*Id.* at 6; Doc. #16-1 at 44-58).  According to Martin, after his discharge, the Union "immediately" filed a grievance on his behalf, advancing this grievance through various steps of the grievance procedure until it reached the National Ford Department level, where it was assigned to International Representative Reggie Ransom ("Ransom").  (Doc. #1 at 6).  It is at this stage that Martin challenges the Union's handling of his grievance.

In his complaint, Martin indicates that Ransom sought out his wishes with respect to the outcome of the grievance.  (*Id.* at 6-7).  According to Martin, although he indicated he "wanted nothing short of arbitration," Ransom stated that "he would consider [Martin's] opinion but that the Union had the final decision."  (*Id.* at 7; *see also* Doc. #16-1 at 51 (granting the National Ford Department authority to withdraw or settle a grievance at any time before the matter is heard by an arbitrator)).  Ultimately, on July 7, 2014, Ransom negotiated a settlement of Martin's grievance that provided for reinstatement to a different position within the Company, restoration of full seniority, and more than $12,000 in back pay.  (Doc. #1 at 7; Doc. #16-1 at 167-68).

Martin disagreed with the UAW's decision to settle his grievance, however, and refused to return to work under the terms of the settlement.  Instead, Martin appealed through the UAW's internal appeal process the Union's decision not to advance his grievance to arbitration.  (Doc. #1 at 7).  Martin first appealed to the UAW's International Executive Board ("IEB").  (*Id.*).  A hearing was held on December 1, 2014, after which the IEB issued a decision dated April 30, 2015, denying Martin's appeal.  (*Id.*; Doc. #16-1 at 171-88).  In its written decision, the IEB found that, although Martin maintained that he had permission to leave the plant without notice, the Company denied that this was the case.  (Doc. #16-1 at 187).  As to Martin's claim of disparate treatment (i.e., that some employees were discharged while others were only

3

suspended), the IEB was persuaded by Ransom's conclusion that employees were disciplined based on the severity of the alleged infraction. (*Id.* at 188). The IEB also considered Martin's complaint that he only spoke to Ransom on a few occasions, finding that Martin and Ransom had "multiple phone conversations" and that the "lines of communication were open between them." (*Id.*). In conclusion, the IEB stated:

> Representative Ransom, after a thorough review of the grievance record, concluded he could not prevail before an Arbitrator and we see no reason to disagree with that decision.
>
> Based on the case record and testimony received at the evidentiary hearing, the decision of the National UAW Ford Department was proper and not devoid of rational basis. In addition, there is no evidence that collusion with management, discrimination, or fraud improperly motivated the decision.

(*Id.*).

After the IEB upheld Ransom's decision to settle the grievance, Martin filed an additional appeal to the UAW's Public Review Board ("PRB"). (Doc. #1 at 7-8). On September 29, 2015, the PRB affirmed the decision of the IEB, denying Martin's appeal, and concluding that his "violation of the rule against time theft was firmly established." (*Id.*; Doc. #16-1 at 190-203). The PRB further found that:

> The company's records confirmed that Martin habitually left the plant and returned to check out toward the end of his shift. Time theft is a dischargeable offense. Despite powerful evidence of Martin's severe misconduct, Representative Ransom convinced the company not only to reinstate him, but also to pay him a cash settlement. Martin's response to the settlement achieved on his behalf is difficult to understand. We do not know what else Martin hoped to achieve through arbitration of his grievance.
>
> \*     \*     \*
>
> Nothing in this record supports a conclusion that Martin was singled out for disparate treatment. Representative Ransom testified before the IEB that the company's assessment of relative fault was reasonable. Martin's examples of employees who might have received more severe penalties do

4

> not establish selective application of penalties. These examples would also have been unlikely to persuade an arbitrator to order Martin's reinstatement, particularly in a situation where the company was less than enthusiastic about having this employee back.
>
> \* \* \*
>
> The only basis Martin can assert for relief from this Board is that Ransom's decision to settle the grievance was so irrational it constituted a failure of the union's duty to represent him. The record will not support that claim because the settlement obtained by Representative Ransom was not only rational; it was excellent under the circumstances. The chance of obtaining any remedy from an arbitrator was remote in light [of] Martin's clear violation of the company's rules. It was entirely responsible for the union to decide it would not risk Martin's reinstatement in order to pursue arbitration of the kinds of arguments he has raised.

(Doc. #16-1 at 202-03). As such, the PRB affirmed the decision of the IEB. (*Id.*).

Having exhausted his internal union appeals, Martin filed the instant federal court lawsuit against both the UAW and AK Steel on February 3, 2016. (Doc. #1). Martin's breach of contract claim against AK Steel has been dismissed by this Court (Docs. #21, 24); thus, all that remains is Martin's breach of the duty of fair representation claim against the Union.

### B.     The UAW's Motion to Dismiss

#### 1.     Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

> 2. *Martin's Claim for Breach of the Duty of Fair Representation Should be Dismissed*

Martin styles this case as a "classic hybrid" action, brought pursuant to Section 301 of the

LMRA, 29 U.S.C. §158. (Doc. #1 at 4). As such, Martin must prove both a breach of contract by the Company, and that the Union breached its duty of fair representation to him. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). To prove a breach of the duty of fair representation, Martin must demonstrate that, in settling his grievance, the Union acted in an arbitrary, discriminatory, or bad faith manner. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Moreover, judicial review of a union's performance is "highly deferential." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78 (1991). "Union representatives are not held to the same standard as lawyers." *Baker v. Lear Corp.*, 2016 WL 4493669, at *8 (E.D. Mich. Aug. 26, 2016) (citing *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 539 (6th Cir. 2003)).

In this case, Martin's complaint alleges only that the Union's conduct was "arbitrary." (Doc. #1 at 8). According to the Sixth Circuit, a union's actions are arbitrary:

> … only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. Moreover, ordinary mistakes, errors or flaws in judgment also will not suffice…. In essence then, to prevail, a plaintiff has the difficult task of showing that the union's actions were wholly irrational.

*Plunkett v. Smurfit-Stone Container Corp.*, 247 F. App'x 604, 607-08 (6th Cir. 2007) (internal citations and quotations omitted); *see also Air Line Pilots Ass'n*, 499 U.S. at 67. In other words, "A 'tactical decision,' even if it proves to be a 'devastating' miscalculation of strategy, is not a breach of the duty of fair representation." *Baker*, 2016 WL 4493669, at *8 (quoting *Garrison*, 334 F.3d at 541). Moreover, even if Martin could show that the Union acted contrary to its legal duty, he also must show that the Union's actions or omissions "tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach." *Dushaw v. Roadway Express, Inc.*, 66 F.3d 129, 132 (6th Cir. 1995). Applying these standards, it is clear that Martin's claims against the Union are subject to dismissal.

7

In his complaint, Martin alleges that the Union breached the duty of fair representation when it arbitrarily decided to settle his grievance, rather than proceeding to arbitration.[3] Specifically, in the crux of his complaint, Martin asserts that Ransom "handle[d] [his] grievance in a perfunctory fashion," conducting "no investigation whatsoever" into the facts of his situation. (Doc. #1 at 8). Martin further alleges that, as a result, there was no "rational basis" for Ransom's conclusion that his grievance "lacked merit," and that the decision to settle his grievance was "arbitrary." (*Id.*).

Notably absent from Martin's complaint, however, are any factual allegations regarding *how* his grievance was handled in a perfunctory fashion, or *why* the decision to settle his grievance was either *arbitrary* or *irrational*. Indeed, the facts that Martin has included in his complaint show conclusively that the Union did not breach its duty of fair representation. For example, at the same time Martin claims that his grievance was handled in a "perfunctory" fashion, he also chronicles the many steps in the procedure through which his grievance passed. (*Id.* at 6-7). According to Martin, the grievance was first filed at the local level and, from there, was sent up to Region 1A. (*Id.* at 6). As Martin indicates in his complaint, similar employees' grievances were settled at that stage. (*Id.*). From there, however, Martin's grievance went "still higher" to the National Ford Department, where it was settled by Ransom on terms (reinstatement with back pay and restoration of full seniority), which by any objective measure were favorable to Martin under the circumstances. Where Martin's grievance was processed in accordance with the steps set forth in the applicable grievance procedure (Doc. #16-1 at 44-58),

---

[3] To the extent Martin believes he had an absolute right to have his grievance arbitrated, that is not the case, as the United States Supreme Court long ago recognized that a union is not obligated to process every grievance to arbitration. *See Vaca*, 386 U.S. at 190 (stating that, although a union may not arbitrarily ignore a meritorious grievance, or process it in a perfunctory fashion, an individual employee does not have the "absolute right" to have his grievance taken to arbitration).

8

there simply is no factual support for his conclusory allegation that it was handled in a "perfunctory" manner.

In his complaint, rather than focusing on the totality of the grievance procedure, Martin alleges that Ransom, after receiving the grievance at the National Ford Department level, should have re-investigated the case, rather than relying on the grievance record as he received it.[4] (Doc. #1 at 6-8). Martin points to no statutory or case law, however, that requires the Union to conduct an independent review of a grievance at every step of the grievance procedure, and the Court is aware of none. Moreover, Martin points to no facts that are missing from the grievance record presented to Ransom that would have surfaced during a new investigation. And, indeed, despite the fact that Martin alleges in his complaint that he talked to Ransom throughout the process (*Id.* at 6-7), he does not allege that Ransom ignored, overlooked, or failed to follow up on any new information provided by Martin. Thus, by Martin's own admission, Ransom's investigation was sufficient to satisfy the duty of fair representation. *See Blesedell v. Chillicothe Tel. Co.*, 811 F.3d 211, 220-21 (6th Cir. 2016) (union merely required to conduct reasonable investigation, not one that is "error-free" or "perfect").[5]

Likewise, Martin's assertion that the decision to settle his grievance was "arbitrary" and lacked a "rational basis" is without merit, as the complaint and the documents referenced therein

---

[4] Martin also takes issue with the fact that Ransom did not meet with him personally, claiming he must not have felt the situation "worthy of a face to face meeting," and asserting that such a failure constitutes a violation of the CBA. (Doc. #19 at 3, 6). Indeed, Martin asserts that the CBA provides that "once a grievance reaches the International level the Union will 'send an International Representative to the plant to investigate the grievance.'" (*Id.* at 6 (quoting Doc. #16-1 at 55)). This portion of the CBA, however – Article VIII, Section 20(C)(1) – provides for "Special Procedures" that apply only to health and safety grievances; thus, it has no bearing on Martin's discharge grievance.

[5] Moreover, even if Martin could show that Ransom's investigation was so deficient as to constitute a breach of the duty of fair representation, his claim would nevertheless fail because he cannot establish that this breach so seriously flawed the grievance procedure as to make it "more than likely" that the outcome was affected. *Dushaw*, 66 F.3d at 132.

detail with specificity the Union's rational reasons for settling the grievance. Specifically, Martin acknowledges in his complaint that:

> In his briefing to the IEB in response to my appeal, Regie [sic] Ransom claims my case lacked merit. He cites three court precedents granting the Union leeway in settling grievances, then one case[6] similar to mine yet under much different circumstances, a case he himself lost.

(Doc. #1 at 7 (footnote added)). A review of the "briefing"[7] referenced by Martin in his complaint, however, fully sets forth the Union's rationale for settling Martin's grievance, belying any claim that this decision was arbitrary or irrational. Specifically, in a September 29, 2014 memorandum drafted in response to an inquiry from the IEB, UAW Vice President Jimmy Settles noted that, as to culpability, during the processing of the grievance, Martin never denied that he had left the premises or that he was paid for work not performed. (Doc. #16-1 at 205). And, as Martin pointed out, in further support of the reasonableness of the decision to settle Martin's grievance, Vice President Settles cited a recent arbitration case evidencing the seriousness with which arbitrators treat allegations of time theft, as well as a recent grievance arbitration between the Company and the Union, with similar facts, where the arbitrator denied the Union's grievance. (*Id.* at 205-06). As such, Vice President Settles reiterated his belief that the settlement negotiated on Martin's behalf "trump[ed] the unlikely possibility of prevailing at arbitration." (*Id.* at 206).

Moreover, in denying Martin's appeal, the IEB specifically found that, "Representative Ransom, after a thorough review of the grievance record, concluded he could not prevail before

---

[6] Martin attached a copy of an arbitration decision to his response to AK Steel's motion to dismiss. (Doc. #14 at 14-23). Although several pages of the decision are missing, it is nevertheless clear that the arbitration was very similar to the issue in Martin's grievance (theft of time) and, thus, was properly considered by the Union in deciding how to proceed on Martin's grievance.

[7] Although Martin mistakenly attributes this "briefing" to Ransom, the document at issue was actually prepared by UAW Vice President Jimmy Settles. (Doc. #16-1 at 205-08).

an Arbitrator and we see no reason to disagree with that decision." (Doc. #16-1 at 188). Likewise, the PRB found that:

> The only basis Martin can assert for relief from this Board is that Ransom's decision to settle the grievance was so irrational it constituted a failure of the union's duty to represent him. The record will not support that claim because the settlement obtained by Representative Ransom was not only rational; it was excellent under the circumstances. The chance of obtaining any remedy from an arbitrator was remote in light [of] Martin's clear violation of the company's rules. It was entirely responsible for the union to decide it would not risk Martin's reinstatement in order to pursue arbitration of the kinds of arguments he has raised.

(*Id.* at 203). Thus, it is clear from the face of Martin's complaint, as well as from documents referenced therein, that the Union's decision to settle Martin's grievance was well-reasoned and well within the "wide range of reasonableness" afforded to unions in grievance handling.

In summary, several portions of Martin's complaint – as well as documents referenced therein – undermine his conclusory allegation that the Union's decision to settle his grievance was arbitrary. Specifically, Martin acknowledges that the Union processed his grievance throughout the grievance procedure; sought his input as to the outcome of the grievance before final settlement; reached a favorable settlement (which was aptly described as "excellent under the circumstances"); and explained its rationale in great detail during the internal union appeal process. (Doc. #1 at 6-7; Doc. #16-1 at 202-03, 205-08). For all of these reasons, Martin's breach of duty of fair representation claim against the UAW fails as a matter of law, and the UAW's motion to dismiss should be granted.

### C.     Martin's Motion for Summary Judgment

Lastly, as set forth above, on August 31, 2016, Martin filed a document entitled "Request for Summary Judgment," in which he asks the Court both to grant "Summary Judgement [sic] against the UAW" and to enter a default judgment in his favor in excess of $1,000,000. (Doc. #31). Courts have recognized that where the party with the burden of proof (typically the

11

plaintiff) moves for summary judgment, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Here, where, for all of the reasons stated above, Martin's claim against the Union should be dismissed, it is equally clear that Martin's motion for summary judgment (Doc. #31) should be denied.

### III. CONCLUSION

For the foregoing reasons, Martin's complaint fails to state a claim against the UAW. Therefore, **IT IS RECOMMENDED** that the UAW's Motion to Dismiss **[16]** be **GRANTED** and Martin's Motion for Summary Judgment **[31]** be **DENIED**.

Dated: October 26, 2016　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich.

LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 26, 2016.

                                                                           s/Eddrey O. Butts
                                                                           EDDREY O. BUTTS
                                                                           Case Manager