UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID D. MARTIN,

      Plaintiff,                             Case No. 16-cv-10377
                                           Hon. Matthew F. Leitman

v.

AK STEEL CORPORATION and
UNITED AUTO WORKERS
INTERNATIONAL UNION,

      Defendants.
_____/

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(ECF #42), (2) ADOPTING THE MAGISTRATE JUDGE'S
RECOMMENDED DISPOSITION, (3) DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (ECF #31), (4) GRANTING DEFENDANT
UAW'S MOTION TO DISMISS (ECF #16), AND (5) DISMISSING
PLAINTIFF'S CLAIMS AGAINST UAW**

In this action, Plaintiff David Martin ("Martin") alleges that his union, the
United Autoworkers International Union (the "UAW"), breached the duty of fair
representation imposed by the National Labor Relations Act when it chose to
settle, rather than arbitrate, a grievance that had been filed against Martin's
employer on Martin's behalf. (*See* Compl., ECF #1 at 4, Pg. ID 4.)  The UAW has
moved to dismiss Martin's claim (ECF #16), and Martin has moved for summary
judgment (ECF #31).

On October, 26 2016, the assigned Magistrate Judge issued a Report and Recommendation (the "R&R") in which he suggested that the Court (1) grant the UAW's motion and deny Martin's motion. (*See* ECF #41.)  Martin filed timely objections to the R&R (the "Objections"). (*See* ECF #42.)   The Court has conducted a *de novo* review of the portions of the R&R to which Martin has objected.   For the reasons below, the Court **OVERRULES** the Objections, **ADOPTS** the Magistrate Judge's recommended disposition of the case, **GRANTS** the UAW's Motion to Dismiss, and **DENIES** Martin's Motion for Summary Judgment.

## RELEVANT FACTUAL BACKGROUND

In 2013, AK Steel Corporation ("AK Steel") terminated Martin's employment on the ground that Martin engaged in a theft of time scheme. (*See* Compl., ECF #1 at 4, Pg. ID 4.)  AK Steel concluded that as part of this scheme, Martin left work in the middle of his shift and then returned to "clock out" minutes before the end of his shift. (*See* Third Stage Grievance Fact Sheet, ECF #16-1 at 163-164, Pg. ID 448-449.)

After AK Steel fired Martin, the UAW then filed a grievance against AK Steel on Martin's behalf under the controlling collective bargaining agreement (the "CBA"). (*See id.* at 6-8, Pg. ID 6-8.)   The UAW assigned one of its representatives, Reggie Ransom ("Ransom"), to handle the grievance on Martin's

behalf. (*Id.*)   Ransom ultimately negotiated a settlement of the grievance. (*See* Settlement Letter, ECF #16-1 at 167-68, Pg. ID 452-53.)  The settlement provided for Martin's reinstatement to a different position at AK Steel, restoration of certain seniority rights, and $12,897 in back pay. (*See id.*)

Martin did not accept the settlement because he believed that the UAW should have pursued arbitration of his grievance on his behalf. (*See* Compl., ECF #1 at 7, Pg. ID 7.)  Martin appealed Ransom's decision to settle his grievance to the UAW's Internal Executive Board (the "IEB").  The IEB held an evidentiary hearing on Martin's appeal and denied relief in a written decision dated April 30, 2015 (the "IEB Decision"). (*See* ECF #16-1 at 171-88, Pg. ID 456-73.)  The IEB Decision stated, among other things, that:

> Representative Ransom, after a thorough review of the grievance record, concluded he could not prevail before an Arbitrator and we see no reason to disagree with that decision.
>
> Based on the case record and testimony received at the evidentiary hearing, the decision of the National UAW Ford Department was proper and not devoid of rational basis.  In addition, there is no evidence that collusion with management, discrimination, or fraud improperly motivated the decision.

(*Id.* at 188, Pg. ID 473.)

Martin then appealed the IEB Decision to the UAW's Public Review Board (PRB), and that board affirmed the decision on September 29, 2015. (*See* PRB Decision, ECF #16-1 at 190-203, Pg. ID 475-88.)  The PRB found that:

3

The company's records confirmed that Martin habitually left the plant and returned to check out toward the end of his shift. Time theft is a dischargeable offense. Despite powerful evidence of Martin's severe misconduct, Representative Ransom convinced the Company not only to reinstate him, but also to pay him a cash settlement. Martin's response to the settlement achieved on his behalf is difficult to understand. We do not know what else Martin hoped to achieve through arbitration of his grievance. He cannot reasonably have expected an arbitrator to order a continuation of the practices that had been discovered in the slab yard.

\*     \*     \*

Nothing in this record supports a conclusion that Martin was singled out for disparate treatment. Representative Ransom testified before the IEB that the company's assessment of relative fault was reasonable. Martin's examples of employees who might have received more severe penalties do not establish selective application of penalties. These examples would also have been unlikely to persuade an arbitrator to order Martin's reinstatement, particularly in a situation where the company was less than enthusiastic about having this employee back.

\*     \*     \*

The only basis Martin can assert for relief from this Board is that Ransom's decision to settle the grievance was so irrational it constituted a failure of the union's duty to represent him. The record will not support that claim because the settlement obtained by Representative Ransom was not only rational; it was excellent under the circumstances. The chance of obtaining any remedy from an arbitrator was remote in light [of] Martin's clear violation of the company's rules. It was entirely responsible for the union to decide it would not risk Martin's reinstatement in order to pursue arbitration of the kinds of arguments he has raised.

(*Id.* at 202-203, Pg. ID 487-88.)

On February 3, 2013, Martin filed suit in this Court against AK Steel and the UAW under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (hereinafter, "Section 301"). (*See* Compl., ECF #1 at 4, Pg. ID 4.) Martin claims that (1) AK Steel wrongfully terminated his employment in violation of the CBA and (2) the UAW breached its duty of fair representation by pursuing his wrongful termination grievance against AK Steel in a "perfunctory fashion." (*Id.* at 4-8, Pg. ID 4-8.)[1]   Martin sets forth his criticisms of the UAW in the following paragraphs of his Complaint:[2]

> I received a phone call from Reggie Ransom telling me he would be handling my grievance from that point to its conclusion. I never met him until after he settled my grievance and he never asked a single question about my situation. On our first phone conversation he asked me what I wanted. I told him I wanted nothing short of arbitration. He told me he would consider my opinion but that the Union had the final decision. The next phone call I got from him he told me the offer I had already rejected was still on the table. Once again I rejected it and told him all I wanted was for a judge to hear the facts of the case and decide, no matter what I may possibly lose. A few months later, out of nowhere, I received another call from Reggie Ransom telling me he had settled my grievance, and that the matter was done. He gave no expanation or reasoning for his decision.

---

[1] On July 08, 2016, the Court dismissed Martin's claim against AK Steel. (*See* ECF #24.) All that remains is Martin's breach of the duty of fair representation claim against the UAW.

[2] The paragraphs are reproduced verbatim (including any typographical errors).

The terms he agreed to were almost identical to the offer I had twice rejected. The Union told me my only options were to adhere to the terms of the settlement, or I could appeal his decision to the International Executive Board (IEB). I appealed to them and they eventually sided with Reggie Ransom. I then made my last appeal to the Public Review Board (PRB) who did the same.

In his briefing to the IEB in response to my appeal, Regie Ransom claims my case lacked merit.  He cites three court precedents granting the Union leeway in settling grievances, then one case similar to mine yet under much different circumstances, a case he himself lost.  He also claims I was in violation of rule twenty five in the Code of Conduct.

What Reggie Ransom, the IEB, and the PRB seem to have forgotten is that the Union is only granted this great leeway once minimum standards have been met. They satisfied none of them.

As a Union member in good standing, I had the right to expect that the CBA be fairly and uniformly administered.  If that was not to be the case. the grievance process was there to protect against any abuses or inequality in its administration.  During the grievance process, I had the right to expect that an investigation would be conducted on my behalf, that due process would be followed, and that it would be conducted with care as my livelihood and future were at stake.

Reggie Ransom and the UAW cannot claim there was a rational basis for concluding that my case lacked merit.  He was supposed to conduct an investigation, investigate the facts, then draw his conclusions based on the particulars on my individual case.  Instead he cites case law and a grievance unrelated and not germane to my case because he conducted no investigation whatsoever.  And in so doing, Reggie Ransom did handle my grievance in a perfunctory fashion and did breach his duty and my right to fair representation.

> By citing Rule twenty five, a rule the Company did not claim I
> violated, by willfully ignoring the positions of both Local 600
> and Region 1A, and being unable to point to a single act they
> performed on my behalf, Reggie Ransom and the UAW
> International did act against and not for my best interests. For
> these reasons Reggie Ransoms decision to settle must be
> considered arbitrary.

On April 14, 2016, the UAW moved to dismiss Martin's claims (the "Motion to Dismiss"). (*See* ECF #16.)  Martin responded to the Motion to Dismiss on April 26, 2016. (*See* ECF #19.)  On August 31, 2016, Martin also filed a Motion for Summary Judgment in which he asks the Court to enter a judgment in his favor in excess of $1,200,000. (*See* ECF #31.)

The Court referred the parties' motions to the assigned Magistrate Judge. On October, 26 2016, the Magistrate Judge issued the R&R, in which he recommended that the Court grant the UAW's motion and deny Martin's motion. (*See* ECF #41.)   The Magistrate Judge determined that "several portions of Martin's complaint – as well as documents referenced therein – undermine his conclusory allegation that the [UAW]'s decision to settle his grievance was arbitrary." (*Id.* at 11, Pg. ID 667.)   On October 31, 2016, Martin filed the Objections, which consist of ten individually-numbered objections to the R&R. (ECF #42.)

7

## **LEGAL STANDARD GOVERNING REVIEW OF OBJECTIONS**

When a party has objected to portions of a Magistrate Judge's R&R, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *see also Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party has not objected. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## **LEGAL STANDARDS FOR A MOTION UNDER RULE 12(b)(6)**

Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While the Court must liberally construe documents filed by a *pro se* plaintiff, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), a complaint filed by such a plaintiff

must still plead sufficiently specific factual allegations, and not just legal conclusions, in support of each claim. *See Iqbal*, 556 U.S. at 678–679.

## LEGAL STANDARDS GOVERNING A CLAIM UNDER SECTION 301 OF THE LMRA

"The National Labor Relations Act imposes a duty of fair representation on unions that are selected as the exclusive representatives of employees in a bargaining unit." *Renner v. Ford Motor Co.*, 516 Fed. Appx. 498, 502-03 (6th Cir. 2013) (citation omitted). "This duty is not expressly stated in the statute, but derives from 'the union's status as the employees' exclusive bargaining representative.'" *Id.* (quotation omitted). Section 301 of the Labor-Management Relations Act, 29 U.S.C. 185, authorizes a union member to bring a claim against his union for breach of the duty of fair representation.

To prevail on his Section 301 claim against the UAW, Martin must prove both that AK Steel breached the CBA and that the UAW breached its duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). A union breaches its duty of fair representation when its "conduct toward a member . . . is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 385 U.S. 171, 190 (1967). "Each of these wrongs is mutually independent, meaning, that 'the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty." *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quotation omitted).

Here, Martin is proceeding solely under the theory that the UAW's decision to settle his grievance was "arbitrary." (*See* Compl., ECF #1 at 8, Pg. ID 8.)  In order to prevail on such a claim of arbitrariness, a union member must establish that "in light of the factual and legal landscape at the time of the union's actions, the union's behavior [was] so outside 'a wide range of reasonableness' as to be irrational." *Id.* (quotation omitted).  In reviewing for arbitrariness, the Court's "substantive examination of a union's performance . . . must be highly deferential." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78.  "Mere negligence on the part of the union does not satisfy this requirement.  Moreover, ordinary mistakes, errors, or flaws in judgment also will not suffice." *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (internal citations omitted).  "Even an unconsidered decision by the union is not necessarily an irrational decision." *Id* at 540 (citing *Walk v. P*I*E Nationwide, Inc.* 958 F.2d 1323, 1326 (6th Cir. 1992.)).  Finally, "[u]nion representatives are not held to the same standard as lawyers." *Baker v. Lear Corp.*, 2016 WL 4493669, at *8 (E.D. Mich. Aug. 26, 2016) (citing *Garrison*, 334 F.3d at 539).

## **ANALYSIS**

### **I**

Martin has raised a number of specific objections which the Court addresses below.  Before turning to those objections, the Court explains why Martin has

failed to state a plausible claim that the UAW acted arbitrarily when it settled his grievance.

Martin's initial complaint here is that the UAW settled his grievance even though he unequivocally expressed his desire to arbitrate. Martin highlights that he "told [Ransom] that I wanted *nothing short of arbitration*" and that he repeated to Ransom that "all I wanted was for a judge to hear the facts of the case and decide, *no matter what I may possibly lose*." (ECF #1 at 7, Pg. ID 7; emphasis added.)[3] But the Supreme Court has flatly rejected the notion that a union member has an "absolute right" to have his union pursue his grievance. *See Vaca v. Sipes*, 386 U.S. 171, 190-91 (1967). Thus, Martin's allegations that the UAW settled his grievance against his wishes, standing alone, does not state a plausible claim for relief under Section 301.

The few other specific factual allegations in Martin's Complaint likewise fall far short of stating a plausible claim against the union. Martin alleges that Ransom conducted "no investigation" into his grievance, but the materials

---

[3] Martin now says that he "understand[s] [that he] did not have an absolute right to have [his] grievance taken to arbitration, and that the Union had to take all factors into account when deciding whether or not to settle or proceed with [his] case." (Objections, ECF #42 at 5, Pg. ID 674.) Martin says he simply "assumed it would be done in a fair and thoughtful manner." (*Id.*) Martin's newfound recognition that he could not force the UAW to arbitrate his grievance does not save his Complaint because, as described below, he has not plausibly alleged that the UAW acted arbitrarily or that, in his words, the UAW failed to act "in a fair and thoughtful manner."

referenced in Martin's own Complaint – which this Court may consider in the context of a motion under Rule 12(b)(6), *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) – belie that allegation.[4]   For instance, the IEB Decision rejecting Martin's appeal identifies testimony from Ransom concerning the content of (1) the employer's "'Time Card Analysis' from June 1, 2012 to March 9, 2013," (2) "Payroll Summaries from June 1, 2012 to March 8, 2013," and (3) "Transactions into the plant via 'Reader Description' from June 1, 2012 to March 9, 2013." (*See* IEB Decision, ECF #16-1 at 187, Pg. ID 472.)   Moreover, the IEB Decision identifies Ransom's testimony about "previous arbitration cases and [Martin's] disciplinary record…." (*Id.*)   Ransom could not have provided information concerning the content of the records and the prior cases unless he had conducted at least some review of them.   Indeed, Martin *admits* that Ransom investigated and considered the prior cases; Martin simply takes issue with Ransom's assessment of the prior cases. (*See* Compl., ECF #1 at 7, Pg. ID 7.) Thus, the record available to the Court proves the falsity of Martin's allegation that Ransom conducted "no investigation."

And even if Ransom had failed to investigate and develop a factual record against which to assess Martin's claim (which he did not), the materials available to the Court make clear that the IEB and PRB – the entities that made the

---

[4] Martin's Complaint references the decisions of the IEB and PRB affirming Ransom's decision to settle the grievance. (*See* Compl., ECF #1 at 7, Pg. ID 7.)

penultimate and ultimate decision that the UAW would not pursue arbitration of Martin's grievance – made their decisions based upon a developed factual record. In fact, the IEB heard testimony from Martin and permitted Martin to introduce documentary evidence in support of his claims, and the PRB considered that testimony and evidence.[5] (*See* IEB Decision at 7, ECF # 16-1 at Pg. ID 462; PRB Decision at 8, ECF 16-1 at Pg. ID 482).   Given that the IEB gave Martin an opportunity to include in the record whatever facts and evidence he deemed relevant, Martin cannot plausibly complain that the UAW's ultimate decision not to pursue arbitration was made without any inquiry into the pertinent facts. Moreover, the IEB and PRB decisions refer to other evidence in the record – such as Martin's inculpatory admissions to an AK Steel representative (*see, e.g.*, PRB Decision at 1-3, ECF #16-1 at Pg. ID 475-77) – and the references to such evidence further demonstrate the implausibility of Martin's charge that the UAW conducted "no investigation" into his grievance.

Finally, Martin complains that during the internal appeal process to the IEB and PRB, Ransom said that Martin had violated "rule twenty five in the [employer's] Code of Conduct," (Compl., ECF #1 at 7, Pg. ID 7), when, in fact, Martin was accused of violating a different rule. (*See* Objections, ECF #42 at 3-4,

---

[5] The IEB held its evidentiary hearing on December 1, 2014, in Taylor, Michigan. (IEB Decision at 1, ECF #16-1 at Pg. ID 456.)  Martin attended and brought a supporting witness with him. (*Id.*)

Pg. ID 672-73.)  The rule that Martin was actually accused of violating was a rule prohibiting the theft of time. (*See* ECF #16-1 at 186, Pg. ID 471.)  However, when the IEB and the PRB affirmed Ransom's decision to settle Martin's grievance, they well understood that Martin had been accused of "theft of time." (*See* IEB Decision, ECF #16-1 at 172, Pg. ID 457; PRB Decision, ECF #16-1 at 202-03, Pg. ID 487-88.)  Thus, even if Ransom erroneously referenced the incorrect rule number from the employer's code of conduct, the IEB and PRB correctly understood the gist of the allegations against Martin, and any error by Ransom had no effect on the union's ultimate decision to affirm Ransom's decision to settle. Martin cannot show that Ransom's misidentification of the relevant rule so "tainted the grievance procedure such that the outcome was more than likely affected," and, for that reason, Martin cannot state a plausible Section 301 claim based upon the alleged citation error. *See Dushaw v. Roadway Express*, 66 F.3d 129, 132 (6th Cir. 1995) (holding that in order to prevail on a Section 301 claim, a plaintiff must show that union's alleged breach more than likely affected the outcome of the grievance procedure).

Simply put, the written decisions of the IEB and PRB affirming Ransom's decision to settle Martin's grievance definitively refute Martin's conclusory allegation that the UAW acted arbitrarily.  The decisions reveal that the UAW carefully considered and weighed a number of entirely appropriate factors –

14

including Martin's inculpatory statements to AK Steel, the favorable terms of the settlement, and the low likelihood of success at an arbitration hearing – and reasonably concluded that these factors supported Ransom's decision to settle the grievance. This deliberative process is the *opposite* of an arbitrary action. In short, on the record that is properly before this Court, Martin cannot plausibly allege that the UAW acted arbitrarily. Accordingly, the Magistrate Judge correctly recommended that the Court should dismiss Martin's claim against the union.

## II

The Court now turns to Martin's specific objections. None have merit. The Court reproduces below each of Martin's individually-numbered objections verbatim (including any typographical errors). The Court then explains why it is overruling each objection.

**<u>Objection #1</u>:**

Objection #1 reads:

> On page 2 of his ruling, [Magistrate Judge] Grand recites the charge that "Martin and other hourly employees were engaged in a theft of time scheme" and that we left the plant "in the middle of our shift only to return minutes before the shift ended". I have shown that the CBA clearly states that we were entitled to relief, at our own discretion, provided that it did not affect operations. Furthermore, I have shown that by the nature of my job, crane time at the end of my shift after I had met my production quota was the most opportune time for me to take relief. I did not leave in the middle of the shift, and the company never proved otherwise. The company had proof that those with drive in passes were gone for hours a day, every

> day, but chose not to fire them since their jobs weren't slated to
> be replaced by a machine.

(ECF #42 at 2, Pg. ID 671.)

This objection relates to a single sentence in the factual background section of the R&R in which the Magistrate Judge is simply describing the reason given by AK Steel for Martin's termination. This sentence from the R&R does not relate to the Magistrate Judge's analysis of the plausibility of Martin's claim that the UAW acted arbitrarily, and it is that analysis on which this Court must focus in determining whether to accept the Magistrate Judge's recommendation to dismiss.

Moreover, while this objection asserts Martin's view that AK Steel erred when it fired him, it does not focus on whether the UAW acted arbitrarily when it decided to settle. For instance, the objection says nothing about the issues and factors that the UAW considered and says nothing about the process undertaken by the UAW.

For these reasons, this objection does not establish that the Court should reject the R&R or that the Court should deny the Motion to Dismiss. Accordingly, Objection #1 is **OVERRULED**.

**Objection #2**:

Objection #2 reads:

> On page 3 of his ruling, [Magistrate Judge] Grand quotes
> the IEB decision when he states that "Martin maintained
> that he had permission to leave the plant" and the

16

> company denied that was the case. What does the
> collective bargaining agreement say? Shouldn't the CBA
> have been the deciding factor in this dispute, since it is
> binding on all parties? Again, it states we could take our
> relief at our discretion provided it did not affect
> operations. I lived up to its' requirements yet was still
> terminated, while the UAW did fail to have the CBA
> equally enforced.

(ECF #42 at 2-3, Pg. ID 671-72.)

This objection is similar to Objection #1 in that it (1) focuses on a single sentence from the R&R quoting a document in the record and (2) does not demonstrate any arbitrary conduct by the UAW. While this objection does contain a passing reference to the UAW's conduct, it is a wholly-conclusory reference that lacks any specific factual allegations that, if proven, would establish that the UAW acted arbitrarily.

Accordingly, the Court **OVERRULES** Objection #2 for the same reasons that it overruled Objection #1.

**Objection #3:**

Objection #3 reads:

> On page 4 [Magistrate Judge] Grand again quotes from
> the Union "the IEB was persuaded by Ransom's
> conclusion that employees were disciplined based on the
> severity of the alleged infraction" while on page 7 he
> writes that I "must show that the Union's actions or
> omissions tainted the grievance procedure such that the
> outcome was more than likely affected by the Union's
> breach." Since the IEB was persuaded by Ransom, and
> Ransom deliberately misrepresented the facts of my case;

> citing a rule I was never charged with; how is that not proof of the Union's breach of its duty of fair representation as well as proof that the entire appeals process was tainted? How could it not taint the appeals process, when it altered the very nature of my case?

(ECF #42 at 3, Pg. ID 672.)

This objection focuses on Ransom's citation of the wrong rule. But as explained in detail above, that misidentification was not material to the proceedings before the UAW because both the IEB and PRB accurately understood the basis on which AK Steel fired Martin – for theft of time, not for a violation of the specific rule misidentified by Ransom.[6]   Accordingly, Objection #3 is **OVERRULED**.

**<u>Objection #4</u>:**

Objection #4 reads:

> In his ruling, [Magistrate Judge] Grand states there is "no factual support for" my "conclusory allegation" that the Union handled my grievance in a perfunctory manner and that "notably absent from Martin's complaint... are any factual allegations regarding how his grievance was handled in a perfunctory fashion, or why the decision to settle his grievance was either arbitrary or irrational." Apparently Grand did not read Exhibit P, which I included in my response to the Union's clarification letter, which occurred after he granted their motion but before I knew he interjected himself. It shows in the

---

[6] The Court also notes that Martin does not allege in his Complaint that Ransom deliberately misidentified the rule under which AK Steel fired him, nor does Martin make any specific factual allegations from which a deliberate intent to misidentify could be inferred.

> Union's own words their "reason and the contractual
> basis for the settlement."  They then list Rule 25 as the
> sole reason for settlement, a rule I was never charged
> with.       Apparently   Grand    believes    a   deliberate
> misrepresentation is not a breach of the Union's duty of
> fair    representation,    and    that    such    a   deliberate
> misrepresentation  is  well  within  the  "wide  range  of
> reasonableness   afforded   to   unions   in   grievance
> handling", shows good faith, and provides a rational basis
> for settlement!  The Union settled because they could,
> irrespective of the merits of my case or what was in my
> best  interests.  That  is  perfunctory  handling  of  my
> grievance, and the decision to settle is arbitrary.

(ECF #42 at 3-4, Pg. ID 672-73.)

Like Objection #3, this objection relates, in part, to the misidentification of

the rule under which AK Steel fired Martin, and the Court overrules this objection

for the same reason that it overruled Objection #3.

The Court adds that Martin's suggestion that the Magistrate Judge did not

read "Exhibit P" is demonstrably false.   "Exhibit P" is the first page of a

memorandum from UAW Vice President Jimmy Settles ("Settles") to the IEB (the

"Settles Memorandum"). (*See* ECF #40 at 6, Pg. ID 654.)  A review of the R&R

indicates that the Magistrate Judge read the *entire* Settles Memorandum (not just

the first page) and concluded that Settles put forth a detailed rationale in support of

the UAW's decision to settle Martin's grievance. (*See* R&R, ECF #41 at 10, Pg.

ID 666.)

19

Finally, Martin's allegation of "perfunctory" conduct by the UAW in this objection is wholly conclusory and not supported by any specific factual allegations that, if proven, would establish that the UAW's investigation and analysis of Martin's grievance was insufficient and/or arbitrary.

Accordingly, Objection #4 is **OVERRULED**.

**Objection #5**:

Objection #5 reads:

> Over and over again [Magistrate Judge] Grand takes excerpts from my grievance process to justify his ruling, accepting the Union's words as fact. Yet when I cite the exact same source material, my complaints are dismissed "on grounds that it fails to comport sufficiently with basic pleading requirements." I fail to see how my complaint is not accepted as plausible when it is based on intra Union memos or how deliberate misrepresentation does not make the Union liable for misconduct.

(ECF #42 at 4, Pg. ID 673.)

This objection misses the point of the Magistrate Judge's conclusion that Martin failed to plead a plausible claim. The Magistrate Judge did not fault Martin for relying on any particular source material. Instead, he faulted Martin for not pleading sufficient specific facts to support a plausible claim that the UAW acted arbitrarily.

Accordingly, the Court **OVERRULES** Objections #5.

**Objection #6:**

Objection #6 reads:

> On page 7 [Magistrate Judge] Grand quotes the Sixth
> Circuit on arbitrary conduct.  He cites how "ordinary
> mistakes, errors or flaws in judgement...will not suffice."
> Then on the same page he states how a "tactical decision
> . . . is not a breach of the duty of fair representation."  If a
> tactical decision to deliberately misrepresent a grievant is
> not a breach, what in the world is?

(ECF #42 at 4, Pg. ID 673.)

Like Objections #3 and #4, this objection rests on Martin's allegation that Ransom cited the wrong rule when describing why AK Steel terminated his (Martin's) employment.  This objection is overruled for the same reasons that the prior objections were overruled. (*See also* footnote 5, *supra*.)

Accordingly, Objection #6 is **OVERRULED.**

**Objection #7:**

Objection #7 reads:

> On page 8 [Magistrate Judge] Grand chronicles the
> stages of my grievance procedure as proof the Union
> satisfied its duty of fair representation.  What it really
> shows is that at the lower levels of the process, the Union
> supported my position.  Reggie Ransom settled my
> grievance claiming it lacked merit shortly after UAW
> International accepted it and assigned it to him believing
> it was a meritorious grievance.

(ECF #42 at 4, Pg. ID 673.)

21

Here, Martin fails to make a specific objection to the R&R.  Moreover, even if the UAW *initially* supported Martin's grievance at lower levels of the grievance process, this would not establish that the IEB and/or PRB acted arbitrarily when – after an evidentiary hearing and further development of the facts and issues – they *later* affirmed the decision to settle the grievance.

Accordingly, Objection #7 is **OVERRULED.**

**Objection #8:**

Objection #8 reads:

> On the same page [the Magistrate Judge] cites the Union position about how Ransom's settlement were "by any objective measure...favorable to Martin under the circumstances." If you were fired based on an allegation, while others whom the company had proof against were not fired, would you feel you were fired for just cause? I refused the settlement because I refuse to be held to a different standard and refuse to accept being called a thief.  There was no "theft of time scheme."  The Union and Magistrate Grand tout the term "restoration of full seniority."   It is misleading.   Plant seniority means nothing.  The only thing that matters inside the plant was date of entry on your job.  Since the settlement called for us to have a different job within the plant, we lost our bids, essentially starting over.   If you saw some employees the company knew were gone for hours a day only get suspended, and get to keep their jobs; while you are fired on an allegation and forced to start over, would any objective observer feel the results were in their favor?   Had the company treated everyone the same, there would have been no disparate treatment. Had there been no disparate treatment, the CBA would have been enforced equally.  Had I been treated equally, I would not have a legitimate grievance.   But I was treated

differently, and held to a different standard. And so I do have a legitimate grievance. I thought the Union would be there to ensure my rights, as I thought that was the sole purpose of the Union.  I kept good faith through the entire appeals process. I understand I did not have an absolute right to have my grievance taken to arbitration, and that the Union had to take all factors into account when deciding whether or not to settle or proceed with my case. But I assumed it would be done in a fair and thoughtful manner. I never would have suspected they would ignore my grievance and settle just because thats [sic] what was in their best interests; then misrepresent the facts of my case and cite case law telling me they can do whatever they want.

(ECF #42 at 4-5, Pg. ID 673.)

Here, Martin fails to make a specific objection to the R&R.  Likewise, he fails to identify any facts showing that the UAW acted arbitrarily.  He primarily criticizes the actions of AK Steel and makes conclusory assertions that the UAW "ignored" his grievance – an assertion that is flatly contradicted by the materials before the Court.

Accordingly, Objection #8 is **OVERRULED.**

**Objection #9:**

Objection #9 reads:

[Magistrate Judge] Grand says that there are "no facts that are missing" that "would have surfaced during a new investigation" and that by my own admission I do "not allege the Ransom ignored, overlooked, or failed to follow up on any new information provided by Martin." I most certainly do.  As I have already shown, in the case of Grievant Walker (Exhibit F) which Reggie Ransom

23

uses as his excuse for justify his actions, Reggie Ransom
was the Union Rep assigned to handle the Walker case.
Walker had a drive in pass, allowing the company to
know when he left and reentered the plant.   Having
received the case record where an entire department was
accused of time theft, Ransom could have simply asked
the company if any of the employees had gate passes.
Then he would have seen the disparate punishment meted
out by the company. But he couldn't even bring himself
to ask a single question on my behalf, and did ignore
information that would have at this point been favorable
to those whose grievances had been entrusted to his care.
His failure at this stage to do a single act on our behalf
most certainly altered the outcome of my grievance since
he knew firsthand that Walker was fired because of the
proof the company had against him because of his drive
in pass.  He could have at this point had the CBA and the
punishments equally enforced, but chose to do nothing.
That is the definition of perfunctory handling of a
grievance.

(ECF #42 at 6, Pg. ID 675.)

Objection #9 is not clearly written, but it appears that Martin is making the

following multi-step argument: (1) in a past arbitration case involving a "Grievant

Walker," AK Steel relied upon "gate pass" records to prove that Walker engaged

in theft of time, (2) in this case, Ransom failed to investigate whether Martin and

the other employees in his department who were terminated for theft of time used a

"gate pass" or "drive in pass," and (3) such an investigation would have revealed

that AK Steel did not have "gate pass" evidence in its case against Martin and the other employees in his department. (*See* ECF #42 at 6, Pg. ID 675.)[7]

The Court rejects this argument.  Even if Ransom did not request "gate pass records," the UAW's decision to settle Martin's grievance was based on other "powerful evidence of Martin's severe misconduct" such as "company[] records [that] confirmed that Martin habitually left the plant and returned to check out toward the end of his shift." (ECF #16-1 at 202, Pg. ID 487.)  Martin offers no support for his apparent assertion that AK Steel could not have fired him for theft of time without the type of "gate pass" evidence it had against Grievant Walker. Finally, the Court notes that the UAW was not required to exhaust every possible angle of investigation before settling Martin's case. *See Blesedell v. Chillicothe*, 811 F.3d 211, 220-21 (6th Cir. 2016) ("The duty of fair representation requires a union to undertake a reasonable investigation to defend a union member, not an error-free" or "perfect investigation.").  Martin has not persuaded the Court that the UAW's investigation was unreasonable on the ground that it did not request "gate pass" records.

Accordingly, the Court **OVERRULES** Objection #9.

---

[7] Martin made an identical argument in his response to the Motion to Dismiss. (*See* ECF #19 at 4, Pg. ID 533.)

**Objection #10:**

Objection #10 reads:

> On page 10 [Magistrate Judge] Grand states that "Martin never denied that he left the premises or that he was paid for time not worked." Yes I have.  I have repeatedly stated that nowhere in the case record does the company ever state that I did not meet my daily quota or otherwise perform my job to the best of my ability. They suffered no injury. As for leaving the premises, I have already shown that that was permissible under the CBA.

(ECF #42 at 6, Pg. ID 675.)

In this objection, Martin mischaracterizes the quote from the R&R.  The Magistrate Judge did not contend that "Martin never denied that he left the premises or that he was not paid for time not worked."  Instead, the Magistrate Judge was describing one rationale put forth in the Settles Memorandum in support of settlement: "Vice President Jimmy Settles noted that, as to culpability, during the processing of the grievance, Martin never denied that he had left the premises or that he was paid for work not performed." (R&R, ECF #41 at 10, Pg. ID 666.)

Moreover, even in this objection, Martin fails to "deny" that he left company premises or that he was paid for time not worked.  Instead, he attempts to justify his actions by arguing that he met his daily quota, that AK Steel was not harmed, and that the CBA allowed him to leave.  At most these arguments go to the merits of his grievance.  He fails to put forth any specific argument or facts that show that the UAW's decision to settle was arbitrary.

26

Accordingly, Objection #10 is **OVERRULED.**

<u>**CONCLUSION**</u>

For the reasons stated above, **IT IS HEREBY ORDERED** that:

- Martin's Objections (ECF #42) to the R&R (ECF #41) are **OVERRULED**;

- The Magistrate Judge's recommended disposition in the R&R is **ADOPTED;**

- The UAW's Motion to Dismiss (ECF #16) is **GRANTED;**

- Martin's claims against the UAW are **DISMISSED**; and

- Martin's Motion for Summary Judgment (ECF #31) is **DENIED.**


                                        s/Matthew F. Leitman
                                        MATTHEW F. LEITMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  February 16, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 16, 2017, by electronic means and/or ordinary mail.

                                        s/Holly A. Monda
                                        Case Manager
                                        (313) 234-5113